20-1886, Western Missouri, M.B. et al. v. Jennifer Tidball et al. Mr. Talent, good morning. Good morning. Thank you, sir. Good morning, Your Honor. May it please the Court. I'm Michael Talent, representing Ms. Tidball and the State of Missouri in this fee appeal, Your Honors. The main issue for the Court today is whether a $3.2 million attorney's fee award is reasonable under 42 U.S.C. 1988, where the District Court didn't consider the degree of success on the merits that the plaintiffs achieved. Below, the District Court calculated the load, sir, Your Honors, and then the District Court stopped. I've read the lengthy opinion. I would say she clearly did consider it. You just don't agree with her consideration. Well, Judge Loken, what she did, she carefully walked through the load, sir. So the focus below was the attorney's billing judgment. They had that consultant come discuss. Let me be more specific. The District Court said a comparison of the complaint with the provisions in the settlement agreement, whether you want to call them voluntary or compelled or what, they show significant benefits of various kinds for the class beneficiaries. Now, you just say, well, she didn't tell us exactly what. That suggests to me you expect us to be pigs in a forest looking for truffles. You tell us where we should look in that comparison to confirm your idea that she did not think about relief that was paid for in the complaint. Sure, Your Honor, the district, I mean, the one of the issues here is that the District Court actually doesn't engage in that careful analysis. So, for example, in the red brief pages, we I think we have six, seven pages comparing counsel. That's my whole point. If you think she wasn't specific enough, you tell us how. Don't just tell us you wish she wasn't specific enough. You go check me out. That is that is not. We're not going to do that. Of course, Your Honor. It's not our job. We're not going to sit there and go through your 47 page complaint and the however many pages the settlement agreement is and match them all up and see if the settlement agreement addressed your prayers for relief. And then somehow weigh them independently to say, well, was that limited success or not? That is, in other words, you're unless you get specific with us, your argument is a loser. Yes, Your Honor. And I can get I'm very happy to get specific with you. And we brought this up in the red brief. It is actually my my friend on the other side who says, Your Honor, we we got a lot. Go go read the settlement agreement in the red brief we talk about, for example, on the. Yeah, I agree. Both both lawyers briefed it that way. And if it's an if if it's putting an improper burden on us, guess who loses the appellate? We certainly don't intend to impose an improper burden on you. You did. I'm telling you, I'm telling you, you did. And if you can't if you can't carry that oral argument, you got a steep hill. Of course, Your Honor. And I'm happy to discuss. So, like, for example, the complaint asks for an injunction, a declaratory relief that how the state compiles and looks at the medical records for the plaintiff class was constitutionally inadequate. The settlement, by contrast, contains much based on what the complaint says. It's on the appendix that one of one is that the plaintiff class wants the state to implement and maintain a comprehensive and updated electronic health care system. And provide a complete medical history of the child to the foster's caretaker upon placement. By contrast, what the settlement agreement says is that the state will commit with reasonable and diligent effort to compile and maintain one or more medical record systems. This is on a joint appendix seven, seven, seven, 70 to 71. And they will make efforts to document efforts to maintain the medical info. And there's a staffing. The there's further discussions about state commitments to build again one or more systems, not just one system, not just an updated comprehensive system. And then provide the medical. Well, you see, counsel, that that confirms what I suspected. The settlement agreement does address it. It doesn't lay out a 250 page comprehensive system for the future. It includes a commitment by the state with jurisdiction retained in the district court to review and critique compliance. I would say that's an agreement that given the breadth and vagueness of the complaint, as you just described it, I would say that's clearly addressing the problem. Well, your honor, the state of Missouri actually doesn't contest that. It addresses the problem to some extent. And the settlement agreement you do, you are arguing that the that the settlement agreement doesn't address the prayers and the complaint. Therefore, there was limited success. That's your argument. You started there. Well, yes, your honor. And I apologize. What? No apology. I'm just you know, you know, you getting getting an attorney's fee award reviewed on appeal is about as as as steep a hill as an appellate can attempt to climb. And you're and I'm just saying you're doing it with generalities and that doesn't get you there. Part of the problem here, your honor, is a district. To your point, exactly. This is the review of the degree of success on the merits is a question in the first instance for the district court. And the district court didn't get there. The district court simply says on page 978 of the joint appendix in its analysis, hey, they got excellent results. Well, the state of Missouri is not actually disagreeing that these are good results because the state of Missouri came together with plaintiffs, your honor. And we wrote this wrote this settlement agreement together. This is a joint effort. Our point on appeal here is that this court actually doesn't at the end of the day, this court doesn't need to sit down and say, look, here's the settlement agreement. Here's a complaint. You can. Our point is, you can look at this, your honors, and you can know this isn't this isn't the type of relief you would get after a trial where there's a finding of a constitutional liability and a declaratory judgment that the state violated the constitutional rights of these foster kids. And an injunction saying you got to do all this. You got to rip out your medical record system. You got to build it up a new. You got to get it. You got to make it comprehensive. Just as one example that that I talked about, you can. I think the right answer here, and this is what the Supreme Court did in Purdue v. I agree with you, Judge. Look, right now we're kind of talking in generalities. But part of the problem is we don't have a district court appeal to anchor us in our discussion. And so, because the district court at the end of the day what the district court did not agree with you again, it's a careful opinion on the load stop and the district, the district court didn't take the extra step and say, well, I had, there wasn't a trial there wasn't litigation. There was no finding of liability. Missouri, as far as the legal system is concerned, is completely innocent of any constitutional violations. You're on. That's not reflected in the attorneys. How much of your argument depends on on on the Johnson factors. You also argue that Johnson factors in your brief. And I'm just wondering if that's playing a prominent role in the argument you're making now, or is that a separate issue? Well, your honor, the job, it's playing a prominent role because one of the Johnson factors is degree of success. But I think you can abstract further you can look at Hensley the Eckhart and kind of the cases that stem from there. What the Supreme Court has talked about is when you're dealing with success on the merits, you, the degree of success is actually a very important factor almost elevated above any of the other Johnson factors I think, for example, in Hensley and if memory serves Johnson gets a footnote, but the Supreme Court in the main text of the opinion says degree of success, what they achieved is very important. You understand that the Supreme Court in Purdue said quit focusing so strongly on the Johnson factors. They have been supplanted in importance by the love star analysis. We said that flat out, and yet you argue the Johnson factors. Well, your honor, predominantly, I think it's important in this context that Purdue wasn't fee enhancement. So if you have a fee and this this builds on the point I'm making your honor that when you have a fee enhancement, the load star the calculation of the reasonable hourly hourly rates and the reasonable hours if you go to litigation, if you go to trial, if you get a finding of liability. Yeah, that's all presumptively reasonable. The state of Missouri is not asking for an enhancement. So you've got no case supporting that we've there have been fee awards and class action settlements for decades. Yes, your this notion that you got the plaintiffs have to go to trial and win to get a fee. What we're saying is when there's a settlement and the settlement doesn't reflect complete success on the merits, the field work should be decreased. And that's actually what this court said. Now, what's your best case? What's your best case for that? Not a remand a decision. Fish be St. St. Cloud University, your honor. This court had a settlement agreement. They didn't get complete success on the merits. And this court said it was entirely the district court there. The 8th Circuit was affirming. It's not on all fours, but the 8th Circuit did say, yeah, it was entirely reasonable for the district court to knock the fee down because there was a settlement agreement. At the end of the day, I want to ask you one more question about the Johnson factors, which is my understanding is that before the district court, you briefed and mentioned that the Johnson factors, but the arguments you're making now are not arguments you specifically make. In other words, you didn't focus specifically on the particular Johnson factors. I think it's number 8 and 11, although I don't remember for sure that you're emphasizing now. And so isn't that a problem for us to fault the district court for not analyzing factors upon which you didn't really emphasize in your briefing? Your honor, I completely understand that. I think the answer to that is this was fair. The district court was aware of this issue. The plaintiffs did argue extensively the results. And actually, if you look at the district court opinion, your honor, page 978 of the opinion, the district court sites, hence the Eckerd of 947. My apologies, saying the lodestar is the starting point of the analysis. So the district court was aware of this. And your honor, the entire record was before the district court. They had the settlement agreement where we came and we said we've jointly agreed, your honors, to to to settle this case for the benefit of the foster class. No one. We're not in many liability. It's a compromise in the district. But here's the problem. If there's no dispute over some of the Johnson factors, at least in the district court's eyes, for instance, you talk about similar cases or similar awards. That's something you follow the district court for the district court. Just look to a couple other cases, I think, in the district and said, this looks pretty reasonable compared to that. What's wrong with that? In light of the fact that the state of Missouri didn't come up with any similar cases on its own for the district court to consider? Sure, of course. But the focus on on the degree of success, your honor, is whether textually it's a reason, whether it's a reasonable stack. So it's not necessarily about the cases. It's about the fact that district court didn't actually engage in the necessary analysis to determine whether it's a reasonable fieldwork because the plaintiffs didn't achieve all the full success on the merits and that it's two legal documents, a settlement agreement and the complaint. And so the district court, you know, this court can, as a matter of law, read the two and realize this is a compromise, no finding of liability. This isn't what they would have got at a trial. We can send it back down for the district court to do the analysis. Do you have a prior case where a settlement fee award that was consistent with the lodestar factors was reduced 50 percent for limited success? Not 50 percent, your honor. That was your position in the district court, right? Correct, your honor. And I'd like to save at least a minute for a rebuttal. So to answer your, I don't have a 50 percent point, your honor, but this goes into, I guess. What's your biggest? I think off the top of my head, fish was 15 percent or 20 percent. The district court made that reduction. To the lodestar. I'm talking about appellate court. I don't I don't have an appellate case for you on exactly on that point, your honor. But the issue here is whether or not, you know, 50 percent is reasonable based on the degree of success they achieved was a question for the district court in the first instance. And the district court simply didn't do it. So under Kenny, under Purdue remanded for the district court to do that would be entirely appropriate. Counsel, I want to I want to follow up one more time on Johnson, which is it sounds to me like this is less about Johnson to you and more about just the probability or the the the amount of success that that's the Johnson factor you're focusing on. And the other stuff is just window dressing the similar cases, similar awards, et cetera. Am I correct in that? Because you immediately took when I asked about the similar awards, you immediately took me back to success on on the merits. Yeah, I'm not abandoning the other arguments in my brief, Judge Strauss, but I think that that is that is the biggest issue here is a reasonable fee award. And according to the court, Supreme Court looks at the final results of plaintiffs achieved and the district court simply didn't do that here, whether by saying, hey, these are all these are cases that are, you know, reached a similar result. And this was a fee that they achieved or anything like like that. The district court simply didn't do that. And that's what justifies a remand here. And I'll reserve my last 15 seconds for rebuttal if that's all right. Very good. Thank you, Mr. Thank you, Your Honor. Please, the court. I'm Stephanie Schuster here on behalf of the appellee foster children. The district court awarded a reasonable fee. Plaintiffs did not seek all of their fees and the court did not award all of the fees plaintiffs requested. The evidence plaintiffs submitted was detailed, extensive and uncontroverted. The state admitted below that plaintiffs were the prevailing parties. The state admitted below that the settlement agreement, quote, addresses in a detailed and specific manner the issues raised in the complaint. And the state admitted below that the 50 percent cut it requested to the presumptively reasonable lodestar was wholly arbitrary in that it, quote, comes from nowhere. Awarding the lodestar in these circumstances was not an abuse of discretion. The state's arguments for reversal are contrary to the facts to precedent and its own admissions below. First, this was an important and hard fought case and plaintiffs were overwhelmingly successful. The settlement gives plaintiffs everything they asked for. And then some. The agreement requires the state to maintain complete and accurate medical records for every child in state custody and to provide caretakers with each child's full medical history upon placement. That's at 157 and 158 of the record. A settlement requires the state to maintain a thorough policy for obtaining informed consent to track compliance with that policy and to provide mandatory training to social workers and foster providers. That's at pages 163, 166 and 155 and 156. And the settlement requires the state to ensure automatic secondary review by qualified doctors of red flag prescriptions and ensure that the results are provided to the adults who are responsible for giving informed consent. That's at 159 to 60 and 162 of the record. That is all of the relief that plaintiffs asked for in the complaint, with the exception of a declaratory judgment. This is not a case where plaintiffs compromised for significantly less than full relief plaintiffs did not compromise on their demands in any way. Unlike the Eastern District of Virginia cases that the state sites where you see significant movement by the plaintiff giving up large swaths of relief, accepting 4% of damages. That's where there's a compromise that demonstrates that the degree of success was sufficiently low that a reduction to the lodestar may be warranted. In this case, in fact, the settlement agreement imposes obligations on the state that are more onerous than the injunctions plaintiffs sought. For example, the state must also document its efforts to obtain medical information and consent, renew informed consent annually and get approval from a new committee that was established by the agreement to alter any of the red flag criteria. The settlement is simply not a handbook as the state claims it is. The district court declared the settlement was the final judgment in order of the court and incorporated the terms into the judgment. Compliance is not optional for the state. Contempt. Second, the state briefs heavily on appeal this argument that the awarded was an unreasonably high windfall. It wasn't the state compares the fee award to the nonprofit plaintiffs firms annual operating costs and says that indicates a windfall. But it is well settled that operating costs are irrelevant to the determination of a reasonable fee. The Supreme Court held decades ago in Blum that the statutory term reasonable refers to fees calculated at prevailing market rates, even when they're to be paid to nonprofit firms with lower than market operating costs. The district court calculated the lodestar here using the range of market rates that prevail in Missouri, based on objective evidence, including the Missouri lawyers weekly survey and affidavits from local civil rights and class action lawyers. And then, attorney by attorney, the court calibrated those rates to reflect within the prevailing range each attorneys role experience and contributions to the case. Those rates are reasonable, regardless of the operating costs of counsel. The comparable cases that the state sites for the first time on appeal are not actually comparable. One of them did not address the reasonableness of fees and others didn't deal with circumstances like this. There was the this court's decision in the lady center case was based on 1970s rates. The DDC decision they cite, for example, is a wrongful death action based on 2003 market rates. The state has not cited any case comparable to this one that involved issues this complex for this important from where the defendant litigated as tenaciously as the state litigated this case, only to eventually settle for everything the plaintiff asked for. As the district court recognized a case of this duration, complexity, scope and importance is bound to be time intensive. The answer to the state's argument is just judge Strauss was noting that nearly all of them have been waived. The state did not argue below that plaintiffs were unsuccessful or minimally successful. The state did not argue below that a comparison of counsel's operating costs to the total award indicates a windfall. And the state did not argue below that the award is out of sync or out of step with fee awards. In other cases, the state raises each of these arguments for the first time on appeal. The state defends this tactic as a shift in approach. But a failure to raise arguments in the district court is classic waiver or forfeiture. And more importantly, a favor. There is a definite difference between raising issues and raising arguments. Our cases recognize that. We wrestled with the line to draw all the time. But for the most part, the fact that the argument, precise argument on an issue that was fully argued to the district court and a new argument is presented or developed on appeal is not a waiver. It is not a foreclosure. Your Honor, this court's precedents recognize. Of course, my colleagues may not agree, but you get nowhere with that argument with me. I'll try if I can one more time. I think this court's precedents recognize that a different variation on the same legal argument as the same legal issue is not necessarily a forfeiture. But here they say that they were a new argument on a fully argued, a fully argued issue below that council. Discover, develop whatever on appeal. I haven't given a closer analysis. That's not waived. And it's usually not foreclosed. Right. Your Honor, here below the state actually affirmatively conceded that the settlement agreement addresses again in a detailed and specific manner. Each issue raised in the amended complaint. They did not argue that there was a minimal degree of success is that would be inconsistent with that concession below. The argument on appeal is a complete change in approach, a complete shift. And that is a new argument. And we can't fault the district court for not addressing an argument, especially on an abuse of discretion standard of review that the state never raised a district. Well, I guess I guess to judge Logan's point, was it fully argued below? I mean, the problem that I'm having is they cite, for example, the Johnson factors, which encompasses success, which encompasses the similar cases, which encompasses the windfall. But as you say, they don't develop. The state didn't develop any of those arguments at all. So I'm not sure that citing it is enough to preserve the argument. I agree with you, Your Honor. I think they say the fact that they cited Johnson and recited all 12 factors is enough to say that they they raised an argument, an issue about each of the 12 factors, even though reliance on the 12 factors. Judge Logan recognized is not required in the Supreme Court is telling courts to not focus heavily on the Johnson factors. And the fact that the state made an argument that that the fee award was a windfall for one reason below. And then it makes the argument here that the fee award is a windfall for a completely different reason. It's it's it's a different issue that was not developed. And it gave the district court no opportunity to address and therefore cannot have been an abuse of discretion. Turning finally to the state's argument about the burden of proof, the district court held plaintiffs to their burden of proof. Plaintiffs did the work of exercising billing judgment before submitting their fee application and their own at their own expense, retained an expert who reviewed their records for reasonableness, resulting in plaintiffs cutting their own fees by more than 22 percent. The district court did its work meticulously analyzing the evidence for reasonableness. The court reduced the rates for more than half of the attorneys made across the board reductions in response to the arguments the state did make and even found on its own initiative a handful of entries that it determined reflected noncompensable tasks. All told, the district court reduced plaintiffs already reduced fees by another 16 percent, though it's less than plaintiffs requested. Plaintiffs acknowledge that the court's fee award is still within the range of what's reasonable. The court considered the evidence and the circumstances of the case to determine the reasonable hourly rates and the reasonable hours expended, yielding the presumptively reasonable lodestar. The Supreme Court has instructed that that presumption is strong and an adjustment upward or downward to the lodestar should only happen in the rare or exceptional case and must be supported by specific evidence. The state failed to rebut the strong presumption of reasonableness. It argued for a 50 percent reduction but did not offer any specific evidence or any or any evidence at all and admitted that the figure was arbitrary. The state argued that a reduction was warranted because its money comes from taxes. But that fact does not make this case rare or exceptional. Civil rights defendants often are taxpayer funded. Yet Congress determined that civil rights plaintiffs who prevail are entitled to reasonable fees. The state chose to litigate this case aggressively and it is the state, not the plaintiffs, who is answerable to the taxpayers. So unless the court wants me to address any other issues or has any other questions, I will yield the remainder of my time. Thank you. Very good. Let's see, Mr. Talent, have some time. I'll give you I'll give you a minute and a half. Thank you, Your Honor. Your Honor, I'll actually start where the clock's not running. My apologies. Your Honor, as I I'd like to actually start where where my friend on the other side picked off the Supreme Court when it talked about adjustments to the Lodestar, that rare and exceptional language. I think that comes from Purdue v. Kenya, Your Honors, and that rare and exceptional language. What the court said is we've repeatedly said that enhancements may be awarded in rare and exceptional circumstances. It's not about downward revisions to the Lodestar, Your Honor. What the Supreme Court has actually said, and going back to the statutory language, is that a reasonable fee award under 1988 takes into account the final results on the merits. Your Honors, we're not saying we're not coming to court here. We're not saying this was a minimal result. Again, below, we said one point three six million dollars. That's a lot of money. What we're saying, Your Honors, is there's no finding of liability. There was no litigation. The state of Missouri came to the table and negotiated in good faith with the plaintiff class to get a result that while not fully not what they not fully what they would have gotten had this case been litigated to the merits or been a finding of liability. It's something less than that. And Your Honors, we're just saying that the statute says reasonable. It would be unreasonable for a plaintiff to come into court demanding the moon, get something less than the moon and the district court simply ignore that in this analysis. And that's what happened here, Your Honors. That's why the state of Missouri's position is this needs to go back down. The district court in the first instance needs to make that determination because that is what a reasonable fee award would constitute. There's simply no procedural or technical reason why this court can't effectuate Congress's intent for the statute when it said reasonable. And for that reason, Your Honors, I would respectfully ask this court to reverse. Case has been well briefed and argument has been helpful and we will take it under advisement.